UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE VIVENDI UNIVERSAL, S.A.
SECURITIES LITIGATION

)
)
)
)
)
)

No. 02 Civ. 5571 (RJH)

---

## MEMORANDUM OF LAW OF CERTAIN PLAINTIFFS IN THE INDIVIDUAL ACTIONS IN OPPOSITION TO CLASS PLAINTIFFS' "MOTION REGARDING MISLEADING MASS MAILING SENT TO FRENCH CLASS MEMBERS"

**GRANT & EISENHOFER P.A.**
Stuart M. Grant (SG-8157)
James J. Sabella (JS-5454)
Diane Zilka (DZ-9452)
Christine M. Mackintosh
485 Lexington Avenue
New York, NY 10017
(646) 722-8500

*Attorneys for the Plaintiffs in Nos. 07 Civ. 7370, 07 Civ. 7775, 07 Civ. 7776, 07 Civ. 7778, 07 Civ. 7779, 07 Civ. 7803, 07 Civ. 7863, 07 Civ. 8208, 07 Civ. 9593, 07 Civ. 11485, 08 Civ. 0024, 08 Civ. 0116, 08 Civ. 0117, 08 Civ. 1938, 08 Civ. 01985*

**DIAZ REUS & TARG LLP**
Alexander Reus (AR-4674)
100 SE Second Street, Suite 2610
Miami, Florida 33131
(786) 235-5000

*Attorneys for the Plaintiffs in the foregoing cases except for Nos. 07 Civ. 7370, 08 Civ. 0116, 08 Civ. 0117*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

I.    THE LETTERS SENT WERE NOT MISLEADING ..........................................................2

II.   THERE WAS NOTHING IMPROPER ABOUT THE LETTERS ....................................4

III.  THERE IS NO NEED FOR AN ORDER, BECAUSE COUNSEL
      HAS ALREADY AGREED NOT TO SEND ANY MORE LETTERS ............................7

CONCLUSION.................................................................................................................8

## TABLE OF AUTHORITIES

Page

Cases

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)................................................................2

*In re IPO Sec. Litig.*, 499 F. Supp. 2d 415 (S.D.N.Y. 2007)......................................2, 4

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239 (N.D. Cal. 2000)..................4, 6, 8

*Pearson v. Michael Fair*, No. 81-3219-MA, 1989 U.S. Dist. LEXIS 19088
    (D. Mass. Aug. 28, 1989)...................................................................... 7-8

*Premachandra v. Mitts*, 548 F. Supp. 117 (E.D. Mo. 1982)............................................8

*In re Shell Oil Refinery*, 152 F.R.D. 526 (E.D. La. 1989) ..............................................6

*In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 22701241
    (S.D.N.Y. Nov. 17, 2003) .......................................................................4


Statutes and Rules

22 N.Y.C.R.R. § 1200.6.........................................................................................7

22 N.Y.C.R.R. § 1200.1.........................................................................................7


Miscellaneous

ABA Model Rules of Professional Conduct, Rule 4.2 ....................................................5

Code of Professional Responsibility, DR 7-104(A)(1)....................................................5

Opinion No. 92-1, 1992 WL809153 (Alaska Bar Ass'n Ethics Comm.)
    (Jan. 17, 1992), at *1-2 (emphasis added) ...........................................................5

The undersigned respectfully submit this memorandum of law in opposition to "Class Plaintiffs' Motion Regarding Misleading Mass Mailing Sent to French Class Members by Certain Counsel for the Individual Plaintiffs."

## PRELIMINARY STATEMENT

For reasons as to which one can only speculate, Class Counsel has chosen to present to the Court a matter with which the Court has no need to be involved. Class Counsel complain that counsel for certain of the Individual Plaintiffs in this case has written to some French investors, alerting them that the defendants are seeking to exclude them from the class.[1] Class Counsel asks for an order preventing any further letters of this sort, and authorizing them to send "corrective" communications to these investors.

Defendant Vivendi joins the motion, submitting a declaration by its counsel professing great concern that the letters will "confuse and mislead" the members of the class that he does not represent.[2] The accusations set forth in the declaration of Vivendi's counsel are patently incorrect, and the Court will readily see through the crocodile tears that he sheds for the members of the class that Vivendi defrauded out of billions of dollars.

There is no need for the Court to get involved in this situation. The impression that Class Counsel wishes to create of a mass solicitation is simply false. There was no "mass mailing" to French investors. Letters were written to only ten institutional investors in France with whom

---

[1] While Class Counsel asserts that the letters were jointly sent by Grant & Eisenhofer P.A. ("G&E") and by Diaz Reus Rolff & Targ LLP ("DRRT"), in fact the letters were sent only by DRRT (now known as Diaz Reus & Targ LLP). G&E played no role and was not aware that the letters were being sent. Declaration of James J. Sabella, dated June 18, 2008 ("Sabella Decl.") ¶ 2.

[2] *See* Declaration of Paul C. Saunders, dated June 10, 2008 ("Saunders Decl.") ¶ 4. Defendants obviously lack standing to complain that some of their adversaries – persons they are seeking to exclude from the class – are being misled.

DRRT previously had a relationship or had communicated.[3]  Furthermore, as set forth below, the letters that were sent out were not misleading or improper, and, moreover, prior to the filing of Class Counsel's motion, Class Counsel was informed that the counsel involved would not send any further letters of this nature.  There is no need for the Court to order what counsel has already agreed to.

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), on which Class Counsel relies,[4] made clear that courts must act with great caution when confronted with an application to restrict communications with potential class members.  As noted in *In re IPO Sec. Litig.*, 499 F. Supp. 2d 415 (S.D.N.Y. 2007) ("*IPO*"), which is also relied on by Class Counsel:[5]

> [T]he *Gulf Oil* Court specified that any order that limited communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.  A court making this assessment should look to further the policies embodied in Rule 23, while limiting speech as little as possible, consistent with the rights of the parties under the circumstances.  Restraints on communications to class members have the potential to raise First Amendment concerns and courts must be attentive to whether the restraint is justified by the likelihood of serious abuses.[6]

The record in this case does not justify the order sought by Class Counsel or by Vivendi.

## I.    THE LETTERS SENT WERE NOT MISLEADING

The letters that DRRT sent were not misleading, and therefore there is no need for a

---

[3] Declaration of Alexander Reus, dated June 17, 2008 ("Reus Decl.") ¶¶ 2-3.

[4] Memorandum of Law in Support of Class Plaintiffs' Motion Regarding Misleading Mass Mailing Sent to French Class Members by Certain Counsel for the Individual Plaintiffs, dated June 6, 2008 ("Class Mem.") at 3.

[5] Class Mem. at 4-5.

[6] *Id.* at 418 (internal quotation marks and footnotes omitted).

corrective letter. Attached as Exhibit A to the Vasilescu Declaration is a copy of the form letter

that DRRT sent to the ten French investors. The letters informed the investors that the

defendants are seeking to exclude them from the class and that there is a risk that that might

occur. Plainly, that is true, notwithstanding Class Counsel's position that defendants' motion

should not be granted. Until the Court denies the motion, there is a risk that it will be granted.

Indeed, it is hard to see how Class Counsel could fulfill their fiduciary duties to the French

members of the class without alerting them to the possibility that they might have to take action

to protect their rights in this regard.

Nor was it misleading for the letters to suggest that the investors might need to act

promptly. Trial is scheduled for October. While the Court's January 7, 2008 Order stays

individual actions filed after February 28, 2008, the undersigned have asked the Court to modify

such Order, in the event French investors are excluded from the class, to give French investors

time to file actions and participate in this case.[7] The Order contemplates such an application.[8]

Should the Court grant French investors the opportunity to file actions and participate herein, as

has been requested, the window would presumably be short, so they would need to act promptly.

---

[7] *See* Memorandum of Law of Certain Plaintiffs in the Individual Actions in Response to
Defendants' Motion for Reconsideration of the Court's Decision Certifying a Plaintiff Class that
Includes French Shareholders, dated May 2, 2008 (Docket Item 512). French shareholders have
heretofore been included in the class, and therefore there was no need for them to file an
Individual Action to protect their rights. To avoid unfair prejudice to French shareholders by
virtue of a stay of their individual actions, they should be afforded a reasonable opportunity to
file an Individual Action and to participate herein, in the event that the motion for
reconsideration of the class certification decision is granted.

[8] The January 7 Order provides that Individual Actions filed after February 28, 2008 shall be
stayed absent "further application to the Court" (¶ 17).

The cases cited by Class Counsel[9] are inapposite. For example, in *IPO*, the reason why the court directed that the lawyer's communications with class members be submitted to the court for prior approval was that there was a danger that the lawyer was going to reveal attorney work product that he had obtained from class counsel. *IPO*, 499 F. Supp. 2d at 421. As no such circumstance is present here, a restriction on communications with class members based on such a concern is irrelevant to the situation at bar. In *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 22701241 (S.D.N.Y. Nov. 17, 2003), Milberg was soliciting class members to opt out, based on misleading assertions that, *inter alia*, their bond claims could not be asserted in the class action. *Id.* at *1, 7. In contrast, the letter to the ten French investors at bar did not urge anyone to opt out and merely provided accurate information that an effort was being made by defendants to have them excluded from the class. And in *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239 (N.D. Cal. 2000), Milberg and another firm solicited opt outs without, among other things, presenting information as to the comparative costs and benefits of participating in the class action as opposed to opting out. *Id.* at 1245. Again, such circumstances are completely inapposite.

The letters sent to the ten French investors were not misleading, and no "corrective" notice is needed. In these circumstances, it would appear that Class Counsel wishes to write to these investors not to clarify any misimpressions but simply to cast aspersions at a competitor law firm. No corrective notice is warranted, and none should be ordered.

## II.     <u>THERE WAS NOTHING IMPROPER ABOUT THE LETTERS</u>

The subject of DRRT's letter was defendants' request that the Court exclude French investors from the class. DRRT's letters simply informed the French investors that there was a

---

[9] Class Mem. at 4-5.

risk that they could be excluded from the class and suggested that they might want to put

themselves in a position promptly to consider their options if that were to occur.  The letters from

DRRT did not urge any class member to opt out of the class, and they can in no way be

construed as actively soliciting opt-outs from the class.

Without citing any authority, Mr. Saunders asserts that "it is wholly improper and a

violation of the rules" for Mr. Reus to communicate with members of the class.[10]  The fact is

that, even after a class is certified, where, as here, the time for members of a certified class to opt

out has not yet expired, it is entirely appropriate for counsel other than class counsel to

communicate with class members to advise them of their rights and options.  As explained by

one state bar association ethics committee:

> The decision on "opting-out" is important, and a class member may decide to seek
> legal advice from independent counsel before deciding one way or the other.  The
> class member may want an opinion from an attorney other than class counsel,
> may not understand the options, may want to consult his or her usual attorney, or
> may be cautious about representation by class counsel for other reasons.[FN1]
>
> > [FN1]   *The committee believes that a lawyer representing
> > individual plaintiffs in a class action may communicate with
> > other members of a certified class about the class action during
> > the "opt-out" period without violating DR 7-104(A)(1).  See* ABA
> > Model Rule 4.2. "Communication with Person Represented by
> > Counsel," *ABA Annotated Model Rules of Professional Conduct*,
> > (1964 ed.) at 268.69 ("Rule 4.2 is intended to preserve the integrity
> > of the client-lawyer relationship by protecting the represented party
> > from the superior knowledge and skill *of the opposing lawyer*")
> > (emphasis added).  The interests of class members who "opt-out"
> > compared to those who "opt-out" [sic] are not, in the committee's
> > view, "opposing" or "adverse" within the meaning of these
> > rules....[11]

---

[10] Saunders Decl. ¶ 3.

[11] Opinion No. 92-1, 1992 WL 809153 (Alaska Bar Ass'n Ethics Comm.) (Jan. 17, 1992), at *1-
2 (emphasis added).

*See also In re Shell Oil Refinery*, 152 F.R.D. 526, 528 (E.D. La. 1989) (attorney client relationship existed between class counsel and the members of the class "since the exclusion or opt-out period expired"); *McKesson,* 126 F. Supp. 2d at 1245 (communications by an attorney with class members not prohibited because "this is not a case where an adverse party is attempting to harass or confuse absent class members…. Rather, this is a case where an outside attorney is arguably trying to *assist* class members with the prosecution of their individual claims.") (emphasis in original). Since the opt out period has not expired, and there is no adversity between counsel for the Individual Plaintiffs and the French investors, the letters sent by DRRT to the ten French investors were not inappropriate.

Not hesitant to fling accusations without any basis, Mr. Saunders also insinuates that Mr. Reus may have used information produced in this action by Vivendi to identify French class members.[12] This accusation is baseless and false. As set forth in Mr. Reus's declaration, he has not seen any information produced by Vivendi in this action identifying the members of the class, and he did not use any such information in connection with sending his letters.[13] The investors to whom he sent his letters were all institutions that his firm had communicated or dealt with in the past, and he assumed that as large institutional investors they would have had positions in Vivendi securities.[14] Indeed, Mr. Reus's letters asked the investors for trading records because without that he could not determine if they were members of the class or not.[15]

---

[12] Saunders Decl. ¶ 2.

[13] Reus Decl. ¶ 4.

[14] *Id.*

[15] *Id.*

6

Accordingly, Mr. Saunders' demand that Mr. Reus be ordered to tell the Court and Vivendi how he obtained the identity of Vivendi shareholders[16] is misconceived, moot and should be denied.

Lastly, Mr. Saunders also charges that the letters violate New York's rules for lawyer advertising material, specifically 22 N.Y.C.R.R. §§ 1200.6(f) and (h).[17]  Mr. Saunders is in error. Under the New York rules, the definition of an advertisement "does not include communications to existing clients or other lawyers." 22 N.Y.C.R.R. § 1200.1(k).  The letter from Mr. Reus attached to Mr. Saunders' declaration was addressed to Saint Gobain's General Counsel.

## III.    THERE IS NO NEED FOR AN ORDER, BECAUSE COUNSEL HAS ALREADY AGREED NOT TO SEND ANY MORE LETTERS

Class Counsel asks the Court to prohibit any further communication initiated by G&E and/or DRRT with any class member who has not already retained the firms.  Putting aside the fact, as discussed in Points I-II above, that there is nothing improper about these contacts with class members prior to the end of the opt out period, there is no need for any such order because counsel told Class Counsel, prior to the filing of this motion, that no further letters of this kind will be sent, pending the Court's ruling of defendants' motion for reconsideration of the class certification decision.[18]  The failure of Class Counsel's motion papers to inform the Court of this key representation is truly inexplicable.

As counsel have already agreed not to send additional letters, there is no need for the Court to issue an order to this effect. *See Pearson v. Michael Fair*, No. 81-3219-MA, 1989 U.S.

---

[16] Saunders Decl. ¶ 4.

[17] Saunders Decl. ¶ 3.

[18] Sabella Decl. ¶ 4.

Dist. LEXIS 19088, at *116 (D. Mass. Aug. 28, 1989); *Premachandra v. Mitts*, 548 F. Supp. 117, 119-20 (E.D. Mo. 1982).[19]

## CONCLUSION

Class Counsel's motion should be denied in all respects.

Dated: New York, New York
June 20, 2008

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

By _____/s/ James J. Sabella_____
       James J. Sabella (JS-5454)
485 Lexington Avenue
New York, NY 10017
(646) 722-8500

*Attorneys for the Plaintiffs in Nos. 07 Civ. 7370, 07 Civ. 7775, 07 Civ. 7776, 07 Civ. 7778, 07 Civ. 7779, 07 Civ. 7803, 07 Civ. 7863, 07 Civ. 8208, 07 Civ. 9593, 07 Civ. 11485, 08 Civ. 0024, 08 Civ. 0116, 08 Civ. 0117, 08 Civ. 1938, 08 Civ. 01985*

**DIAZ REUS & TARG LLP**
Alexander Reus (AR-4674)
100 SE Second Street, Suite 2610
Miami, Florida 33131
(786) 235-5000

*Attorneys for the Plaintiffs in the foregoing cases except for Nos. 07 Civ. 7370, 08 Civ. 0116, 08 Civ. 0117*

---

[19] It may be noted that in *McKesson*, on which Class Counsel relies, one of the firms that wrote to class members was Milberg. The request for an injunction against Milberg was dropped after Milberg agreed to cease its solicitation efforts. *McKesson*, 126 F. Supp. 2d at 1242. At bar, however, Milberg stubbornly persists with this motion notwithstanding the agreement not to send any more letters.